**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **REGAL CINEMAS, INC.,** | ) | **CASE NO. 1:05CV1646** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | |
| | ) | **Judge John M. Manos** |
| **AVG MEDINA, LLC** | ) | |
| | ) | |
| **Defendant.** | ) | **MEMORANDUM OF OPINION** |

On June 21, 2005, Regal Cinemas, Inc. ("Plaintiff") filed a complaint seeking reimbursement for overpaid rent. (Docket No. 1.) On July 20, 2005, it filed a motion for summary judgment. (Docket No. 14.) On September 13, 2005, AVG Medina, LLC ("Defendant") filed a cross-motion for summary judgment (Docket No. 19) and a brief in opposition. (Docket No. 22.) On September 23, 2005, Plaintiff filed a reply. (Docket No. 23.) Finally, On October 20, 2005, Plaintiff filed a brief in opposition to the cross-motion. (Docket No. 26.)

All issues have been fully briefed and are ripe for adjudication. For the following reasons, Plaintiff's motion for summary judgment (Docket No. 14) is **DENIED**; and Defendant's motion for summary judgment (Docket No. 19) is **GRANTED**.

## I.    FACTUAL BACKGROUND

On October 31, 1997, Plaintiff entered into a twenty-year lease agreement with Medina Theater Associates, the predecessor to the Defendant.  The lease covers approximately 9.6915 acres of real property, including a multiplex movie theater, located in Medina County, Ohio.

Pursuant to the original lease, Plaintiff was to pay a certain Minimum Rent, as set forth in Section 4.03 of the lease.  Minimum Rent was set at $15.00 per square foot for the first seven years of the lease and was to increase thereafter according to the terms of the lease.  (Docket No. 1-2, "Lease," at Section 4.03)  Plaintiff was also to pay Percentage Rent, as set forth in Section 4.04 of the lease. Percentage Rent was set at eight percent (8%) of the Gross Sales in excess of the applicable Percentage Rent Breakpoint.  Gross Sales was defined to mean "the aggregate of adjusted Gross Ticket Sales and Other Gross Sales."  See Lease, at Section 4.04(a)(i).  Gross Ticket Sales was defined to mean "all box office receipts for the sale of tickets for admission to the Theater."  Id..  The Percentage Rent Breakpoint was set at the Minimum Rent paid during the applicable calendar year, divided by eight one-hundredths (.08).  Id. at Section 4.04.

Section 4.04(b) of the original lease provided for an Adjustment Formula, which would reduce the Percentage Rent according to the following:

> (b) **Adjusted Gross Ticket Sales**.  Percentage Rent on Gross Ticket Sales is based on Tenant renting each film shown at the Premises at the rental rate of 39% or less of Gross Ticket Sales for that file (the "39% Rate").  If Tenant's film rental payment to its distributor for a film is at a rate greater than the 39% Rate, whether expressed in those terms or expressed otherwise such as the "90/10 Rule," (herein the "Greater Rule"), the Gross Ticket Sales for the film rented at the Greater Rate shall be deemed to be in the reduced amount for the purposes of Percentage Rent, using the following "Adjustment Formula:"
>
> > Subtract from the amount of actual Gross Ticket Sales in a Calendar Year or Partial Calendar Year, as the case may be, the product of: (i) the difference between the Greater Rate and the 39% Rate multiplied

>           by (ii) the Gross Ticket Sales.
>
>           Illustratively:
>
>           Gross Ticket Sales = $10,000
>           Greater Rate = 44%
>           Greater Rate - 39% Rate = 5%
>           Gross Ticket Sales for Percentage Rate = $9,500

See Lease, at Section 4.04(b).  In short, if a film distributor charged a rate higher than 39%, Plaintiff would be entitled to a reduction of its Percentage Rent.

On November 2, 2001, the lease was amended for a second time.[1]  The Minimum Rent was reduced to a fixed amount of $695.997.00 per lease year.  (Docket No. 1-3, "Second Amendment," at ¶2.)  Also, the method used to calculate the amount of Percentage Rent was modified.  This second modification goes to the heart of the dispute between the parties.

Paragraph Three of the Second Amendment increased the Percentage Rent to twenty percent (20%) of the Gross Ticket Sales in excess of the applicable Percentage Rent Breakpoint. The definition of Gross Ticket Sales did not change.  Id. at ¶3.  The Percentage Rent Breakpoint was fixed at $2,000,000.00.  Id.  According to Paragraph Three:

> For all Calendar Years to which this paragraph applies, the Percentage Rent set forth in this Amendment shall be paid by Tenant in lieu of the Percentage Rent set forth in Section 4.04 of the Lease, and the calculation of the amount of Percentage Rent due for each Calendar Year shall be as provided in this Amendment instead of the Percentage Rent calculation provisions set forth in Section 4.04 of the Lease.

Id. (Emphasis added.)

The Second Amendment also contained definition, interpretation, integration, and ratification clauses:

---

[1]   On December 17, 1997, the lease was amended to address the size of the rental property.

> 1. **Definitions**. For all purposes of this Amendment, unless otherwise expressly provided in this Amendment or unless the context in which such term is used indicates a contrary intent, capitalized terms not otherwise defined herein shall have the respective meanings ascribed to such terms in the Lease.
>
> 7. **Interpretation**. If any conflict between the terms of this Amendment and the terms of the Lease occurs, the terms of this Amendment shall govern and control in all respects. It is the intention of Landlord and Tenant with respect to the subject matter hereof that the terms of this Amendment shall supersede and replace in each and every respect the terms and provisions of the Lease which the parties intend to modify pursuant to the terms hereof.
>
> 8. **Entire Amendment**. This Amendment constitutes the complete agreement of Landlord and Tenant with respect to the subject matter hereof. No representations, inducements, promises or agreements, oral or written, have been made by Landlord or Tenant, or anyone acting on behalf of Landlord and Tenant, which are not contained herein, and any prior agreements, promises, negotiations, or representations are superseded by this Amendment. This Amendment may not be amended except by an instrument in writing signed by the parties hereto.
>
> 10. **Ratification**. Except as hereinabove set forth, the Lease shall remain unmodified and in full force and effect, and Landlord and Tenant do hereby ratify and confirm the Lease, as modified and amended herein.

Id. at ¶¶1, 7, 8, and 10.

According to Plaintiff, for calendar years 2002, 2003, and 2004, it overpaid its Percentage Rent because it did not use the reduced rate provided for in Section 4.04(b) of the lease. Plaintiff seeks $213,698.96 in reimbursement and declaratory relief. Defendant responds that Section 4.04(b) of the lease was superseded by the Second Amendment and thus, is no longer applicable.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c).

The party moving for summary judgment has the initial burden to either (1) present affirmative evidence negating an element of the non-movant's claim or (2) demonstrate "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once that burden is met, the non-movant must set forth sufficient evidence to create a genuine issue of material fact. Klepper v. First Am. Bank, 916 F.2d 337, 342 (6th Cir. 1990). To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

All reasonable factual inferences must be drawn in favor of the non-movant. Humenny v. Genex Corp., 390 F.3d 901, 904 (6th Cir. 2004) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, "the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Indeed, "[a] mere scintilla of evidence is insufficient; rather there must be evidence on which the jury could reasonably find for the non-movant." Humenny, 390 F.3d at 904 (internal quotation omitted).

When evaluating cross-motions for summary judgment, the Court is obligated to analyze each motion on its own merits and view facts and inferences in the light most favorable to the non-movant. Westfield Ins. Co. v. Tech Dry Inc., 336 F.3d 503, 506 (6th Cir. 2003).

### III.  LAW AND ANALYSIS

The parties agree that there are no material facts in dispute and that this matter can be adjudicated as a matter of law. (Docket No. 14-2, at 4; Docket No. 19, at 14.)  The sole issue

before the Court is whether Paragraph Three of the Second Amendment supersedes Section 4.04(b) of the lease.

Under Ohio law, "'[t]he purpose of contract construction is to effectuate the intent of the parties,' and that intent 'is presumed to reside in the language they chose to employ in the agreement.'" State ex. re. Petro v. R.J. Reynolds Tobacco Co., 104 Ohio St. 3d 559, 564 (2004) (quoting Kelly v. Medical Life Ins. Co., 31 Ohio St. 3d 130, 132 (1987)). Also, "[w]hen two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of the contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." Layne v. Progressive Pereferred Ins., 104 Ohio St. 3d 509, 511 (2004) (quoting Ed Schory & Sons v. Francis, 75 Ohio St. 3d 433, 440 (1996)).

Here, the parties agree that the terms of the lease and the Second Amendment are plain and unambiguous. The Court agrees and will enforce the terms as written. See Ledyard v. Auto-Owners Mut. Ins. Co., 137 Ohio App. 3d 501, 505 (8th App. Dist 2000) (quoting Nationwide Mut. Ins. Co. v. Finkley, 112 Ohio App. 3d 712, 715 (9th App. Dist. 1995)).

Paragraph Three of the Second Amendment increased the Percentage Rent to twenty percent (20%) of Gross Ticket Sales (as defined in Section 4.04(a)(i) of the lease) in excess of $2,000,000.00. See Second Amendment, at ¶3. Section 4.04(a)(i) defines "Gross Ticket Sales" to mean "all box office receipts for the sale of tickets for admission to the Theater." See Lease, at Section 4.04(a)(i).

The Second Amendment specifically states that the Percentage Rent, "shall be paid by Tenant in lieu of the Percentage Rent set forth in Section 4.04 of the Lease, and the calculation

-6-

of the amount of Percentage Rent due for each such Calendar Year shall be as provided in this Amendment <u>instead of</u> the Percentage Rent calculation provisions set forth in Section 4.04 of the Lease." <u>See</u> Second Amendment, at ¶3 (emphasis added). Moreover, Paragraph Seven of the Second Amendment reinforces that "this Amendment shall <u>supersede</u> and <u>replace</u> in each and every respect the terms and provisions of the Lease which the parties intend to modify." <u>Id.</u> at ¶7 (emphasis added). Thus, according to the plain and unambiguous language of the Second Amendment, Section 4.04 of the lease is no longer applicable.

Plaintiff argues that because Section 4.04(a)(i) of the lease defines Gross Ticket Sales as "the aggregate of <u>adjusted</u> Gross Ticket Sales and Other Gross Sales," and because the Second Amendment does not address the Adjusted Formula reduction, the terms of the lease control. In support of its interpretation, Plaintiff cites to Paragraph One of the Second Amendment, which states that "capitalized terms not otherwise defined herein shall have the respective meanings ascribed to such terms in the Lease." <u>See</u> Second Amendment, at ¶1. Thus, according to Plaintiff, it is entitled to further reduce its Percentage Rent according to the Adjusted Formula.

Plaintiff's interpretation is incorrect. The aforementioned definition cited by Plaintiff does not define Gross Ticket Sales; it defines Gross Sales. <u>See</u> Lease, at Section 4.04(a)(i). Moreover, the Adjusted Formula found in Section 4.04(b) of the lease does not define Gross Ticket Sales. Instead, it defines <u>adjusted</u> Gross Ticket Sales, which is then factored into the calculation for Gross Sales. However, the Second Amendment deleted Gross Sales from the Percentage Rent calculation. Thus, according to the plain and unambiguous terms of the Second Amendment, the Adjusted Formula, which is factored into the calculation for Gross Sales, is no longer applicable.

Because the Percentage Rent calculation in the Second Amendment only factors in Gross Ticket Sales, which is plainly and unambiguously defined and does not include the Adjusted Formula, it must be enforced as written.  See Ledyard, 137 Ohio App. 3d at 505 (quoting Finkley, 112 Ohio App. 3d at 715).  Accordingly, Plaintiff is not entitled to further reduce its Percentage Rent according to the Adjusted Formula.  If Plaintiff had wanted the Adjustment Formula to factor into the Second Amendment calculation for Percentage Rent, it could have easily bargained for its inclusion.

### IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Docket No. 14) is **DENIED**; and Defendant's motion for summary judgment (Docket No. 19) is **GRANTED**.  Each party to bear its own costs.

**IT IS SO ORDERED.**

**Date: October 28, 2005**                              */s/ John M. Manos*  
                                                                    **UNITED  STATES DISTRICT JUDGE**